IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Norman Larry Towson, Jr., ) | |
| ) | |
| Plaintiff, ) | Case No. 8:13-cv-01876-JFA-JDA |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| Officer Eastridge, Officer Bodek, ) | |
| Officer Shover and Edward Stapleton, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This matter is before the Court on a motion for summary judgment filed by Defendants. [Doc. 25.] Plaintiff is an inmate at Ridgeland Correctional Institution who filed this action based on incidents that occurred while he was a pretrial detainee at the J. Reuben Long Detention Center ("Reuben"). [Doc. 1.] Plaintiff is proceeding pro se and brought this civil rights action pursuant to 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under 42 U.S.C. § 1983, and submit findings and recommendations to the District Court.

Plaintiff filed this action on June 18, 2013,[1] alleging deprivation of his constitutional rights under the Eighth Amendment of the United States Constitution. [Doc. 1.] Defendants filed the instant motion for summary judgment on December 6, 2013. [Doc. 25.] On December 9, 2013, the Court issued an Order in accordance with *Roseboro v.*

---

[1]A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). In this case, construing the filing date in the light most favorable to Plaintiff, this action was filed on June 18, 2013. [Doc. 1-2 (envelope showing date received by prison mailroom).]

*Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the summary judgment/dismissal procedure and of the possible consequences if he failed to adequately respond to the motion. [Doc. 26.]  On January 30, 2014, Plaintiff filed a response in opposition to Defendants' motion [Doc. 43].  Accordingly, the motion is ripe for review.

## BACKGROUND

While awaiting trial on burglary chages, Plaintiff was housed at Reuben. [Doc. 1 at 2.] He alleges that on October 1, 2010, he was let out of his cell. [*Id.* at 3.] Plaintiff had a no contact order with Defendant Shover, but Shover was present when Plaintiff was out of his cell. [*Id.*] Plaintiff claims he felt threatened by Shover and asked why Shover was present. [*Id.*] Plaintiff was then forced back into his cell by Defendants Shover and Bodek and another unknown officer. [*Id.*] Plaintiff alleges he was slammed on the ground and Defendants Shover and Bodek kicked and punched him even though Plaintiff was cuffed and restrained. [*Id.*] Plaintiff states that after he was assaulted other officers entered the cell with mace, a pepperball gun and tasers, and proceeded to shoot him with the pepperball gun. [*Id.*]   Plaintiff fled down the stairs and was shot several more times, then punched and tased. [*Id.*] Plaintiff was then taken back to his cell and alleges he was beaten, tased and kicked. [*Id.*] He was left alone for a period of time, then placed in the "black chair" and tased again. [*Id.*] Plaintiff claims he requested a doctor but was denied and that his wounds were severe and took four months to heal. [*Id*. at 4.]  Plaintiff requests compensatory and punitive damages. [*Id.* at 5.]

## APPLICABLE LAW

**Liberal Construction of *Pro Se* Complaint**

2

Plaintiff brought this action *pro se,* which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S.97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F.2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147 (4th Cir. 1978). *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes v. Rowe*, 449 U.S. 5 (1980) (per curiam). Even under this less stringent standard, however, the *pro se* Complaint is still subject to summary dismissal. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

Section 1983 provides a private cause of action for plaintiffs alleging constitutional violations by persons acting under color of state law. Section 1983 provides, in relevant part,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [him] of a right secured by the Constitution and laws of the

United States" and (2) that the defendant "deprived [him] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* at 310 (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and that "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly

attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c). Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact and (2) he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the

non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

**DISCUSSION**

Defendants argue that Plaintiff's constitutional rights were not violated and that they are entitled to qualified immunity.[2] Plaintiff counters that there are disputes of material fact that preclude summary judgment, as detailed in his response. The Court agrees that questions of material fact exist, therefore summary judgment is not appropriate at this juncture.

Because at all relevant times Plaintiff was a pretrial detainee, his claims are evaluated under the Fourteenth Amendment rather than the Eighth Amendment. *Orem v. Rephann*, 523 F.3d 442, 446 (4th Cir. 2008). Unlike convicted inmates, pretrial detainees have not been adjudicated guilty of a crime and may not be subjected to any form of "punishment." *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988). However, while the purpose of pretrial confinement is to ensure the detainee's presence at trial, the detention center may impose restraints on the detainee that are reasonably related to the detention center's interest in maintaining the facility's security, even if the restraints "are

---

[2] To the extent Plaintiff brings this suit against Defendants in their official capacities under § 1983, Defendants are entitled to immunity pursuant to the Eleventh Amendment from Plaintiff's claims for monetary damages. The Eleventh Amendment prohibits federal courts from entertaining an action against a state. *See, e.g., Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam) (citations omitted); *Hans v. Louisiana*, 134 U.S. 1, 10–11 (1890). Further, Eleventh Amendment immunity "extends to 'arm [s] of the State,' including state agencies and state officers acting in their official capacity," *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (alteration in original) (internal citations omitted), because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . [and] is no different from a suit against the State itself," *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted). Therefore, Eleventh Amendment immunity protects state agencies and state officials sued in their official capacity from liability for monetary damages under 42 U.S.C. § 1983. *Id.* As a result, to the extent Plaintiff has alleged claims for monetary damages against Defendants in their official capacities under § 1983, those claims must be dismissed because Defendants in their official capacities are entitled to immunity pursuant to the Eleventh Amendment. Plaintiff appears to concede that only individual claims are appropriate in his response. [Doc. 43 at 10.]

7

discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." *Id.* at 539–40.

In any event, "[t]he due process rights of a pretrial detainee are at least as great as the [E]ighth [A]mendment protections available to the convicted prisoner." *Martin*, 849 F.2d at 870. When analyzing an excessive force claim for a pretrial detainee, "[t]he proper inquiry is whether the force applied was 'in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Taylor v. McDuffie*, 155 F.3d 479, 483 (4th Cir. 1998) (citing *Whitley v. Albers*, 475 U.S. 312, 320–21(1991)), *abrogated on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010). When evaluating whether the use of force was wanton or unnecessary, the Court considers (1) the need for application of force, (2) the relationship between that need and the amount of force used, (3) the threat reasonably perceived by the officials, and (4) any efforts made to temper the severity of a forceful response. *Hudson v. McMillian*, 503 U.S. 1, 7 (citations omitted).

Here, there is no dispute that the officers used force against Plaintiff when they tased him, put him in a restraint chair and shot him with a pepperball gun; the issue is whether the officers used excessive force. As an initial matter, the Court notes that Defendants did not file affidavits addressing the incident, but instead filed incident reports and the results of an internal investigation. [Docs. 25-3 through 25-12]. The incident report and grievance responses indicate that Plaintiff had threatened Defendant Shover in the past and thus there was a no contact order between the two. [Doc. 25-3 at 1.] Defendants assert, through the report, that they followed policy throughout in response to

Plaintiff's aggressive behavior. [*Id*.] Defendant Stapleton's incident report indicates that Plaintiff was out of his cell for his hour of exercise and then refused to go back into his cell. [Doc. 25-4.] Stapleton wrote that Plaintiff spit on the officers. [*Id.*] Plaintiff was warned that if he did not return to his cell he would be shot with the pepperball launcher. [*Id.*] Plaintiff refused and was shot three times, resulting in contusions on his chest and back. [*Id.*] Plaintiff was captured, restrained, and carried back to his cell. [*Id.*] Plaintiff then placed a towel around his neck, therefore requiring the officers to return to Plaintiff's cell. [*Id.*] After attempting to talk to Plaintiff and convince him to remove the towel without success, officers shot four more rounds of pepperballs into the cell. [*Id.*] The officers then entered the cell and forced Plaintiff on the bed, placed a spit shield on his head and carried him to booking. [*Id*.] Plaintiff was restrained behind his back and placed in the restraint chair, after which he was checked every fifteen minutes by medical staff. [*Id*.] Officer Guskiewicz noted that Plaintiff was offered medical assistance. [Doc. 25-5.] Officer Jernigan reported that Plaintiff spit in his face. [Doc. 25-7.] The internal investigation regarding the incident concluded that Plaintiff's statement of events could not be substantiated. [Doc. 25-12 at 4.] "All documentation indicated that Officers followed proper procedures during the altercation and that medical rendered attention and maintained it throughout the entire incident and days following the incident." [*Id*.]

On the other hand, Plaintiff alleges (and includes personal affidavits) that Shover wanted revenge from their previous altercation and was threatening to Plaintiff. [Doc. 43-1 at 2.] Plaintiff claims that he was restrained, including a belly chain, when he was thrown to the ground and kicked. [*Id*. at 3.] Plaintiff states that Defendants continued shooting

him after Plaintiff was subdued and that Plaintiff ran to try to escape the barrage of pepperballs. [*Id*. at 4.] Plaintiff avers that when he was stopped on the stairs and kicked and punched, he was fully in restraints. [*Id*.] After mace was released into his cell, Defendants put a bag over his head, though they knew Plaintiff was having respiratory issues due to the mace. [*Id*. at 9.]   Plaintiff claims that he was tased after he was placed in the restraint chair and that he was bleeding profusely but his request to go to the hospital was denied. [*Id.*]

There is a clear dispute of material fact as to the necessity of the force used, the resolution of which will rest on witness credibility.  Taking the facts in the light most favorable to Plaintiff, it cannot be said that the application of pepperballs, taser and other physical force while Plaintiff was restrained was necessary and a good faith attempt to restore order to the prison.  The Court is unable to assess the relationship between the need and the amount of force that was used.  Further, the Court is unable to determine whether there was any reasonably perceived threat that the application of force was intended to quell or whether any effort was made to temper the severity of a forceful response.  Therefore, summary judgment is not appropriate.  Because this matter must await determination of the facts now in conflict, qualified immunity as set forth in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982) and its progeny is inappropriate as well.  Accordingly, Defendants in their individual capacities are not entitled to summary judgment on Plaintiff's excessive force claim.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that Defendants' motion for summary judgment be GRANTED IN PART and DENIED IN PART. The motion should be granted as to the Defendants in their official capacities but denied as to the officers' individual capacities. If this Report and Recommendation is adopted by the District Judge, it is also recommended that counsel be appointed for Plaintiff for the trial of this action.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

July 16, 2014
Greenville, South Carolina